**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 07-cv-00617-CMA

RICHARD LEE MARTINEZ,

       Petitioner,

v.

KEVIN MILYARD,
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

       Respondents.

---

## ORDER ON PETITION FOR HABEAS CORPUS

---

This matter is before the Court on the Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus ("Petition") (Doc. # 11) filed by *pro se* Petitioner Richard Lee Martinez. Respondents answered the Petition (Doc. # 20), and Petitioner filed a Traverse (Doc. # 24) and a Supplemental Traverse (Doc. # 25). After reviewing the pertinent portions of the record in this case including the Petition, the Answer, the Traverse, the Supplemental Traverse, and the state court record, the Court concludes that the Petition should be denied.

## I.  BACKGROUND

On April 30, 1999, Petitioner was charged in Mesa County District Court ("the trial court") with first degree murder after deliberation, first degree felony murder, and

a crime of violence count.[1]  The charges stemmed from the 1979 murder of Pamela

Powers, whose body was discovered in the bedroom of her trailer at the Mesa View

Mobile Home Park in Clifton, Colorado.  According to the testimony of the pathologist,

Ms. Powers' death was the result of blunt force injury to the head, though some

evidence of asphyxia also existed.  During the course of the investigation, numerous

items of evidence were taken from Ms. Powers' trailer, including the bedroom sheets,

the victim's clothes, and various hairs and fibers found in the room.  The investigation

included scientific testing and analyses including fingerprinting, serological testing, and

hair and fiber comparisons.  Petitioner and his wife, Anna Martinez, lived in the same

trailer park at the time of the murder and were interviewed during the investigation.

The case remained unsolved and was dormant for many years until 1997 when

Petitioner told the authorities that Ms. Martinez, who was then his ex-wife, had killed

Ms. Powers.  Petitioner told investigators in 1997 that Ms. Martinez committed the

murder after unexpectedly finding Ms. Powers and Petitioner having sex.  However,

Petitioner ultimately was charged with the murder.

Prior to trial, Petitioner moved to exclude evidence of statements he had made

to Ms. Martinez during the course of their marriage.  The trial court denied that motion,

finding that Petitioner's statements to the authorities blaming Ms. Martinez for the

murder constituted a waiver of spousal immunity.  Petitioner also moved to exclude

---

[1]  This general introductory background is taken from the statement of facts in
Petitioner's opening brief on direct appeal (Doc. # 39 at App. A, pp.1-4).

testimony regarding an oral report of toxicology results allegedly obtained by the pathologist from an unknown source at a Utah toxicology laboratory in 1979. The trial court denied the motion and allowed the pathologist to testify that toxicology results established that no amphetamines or barbiturates had been found in the victim's system.

Two days prior to the start of Petitioner's trial in July 2000, a published newspaper article discussed allegations of prior sexual assault against Petitioner that had been ruled inadmissible by the trial court. Petitioner moved for a change of venue and that motion was denied by the trial court. During *voir dire*, it became apparent that a number of potential jurors had information regarding Petitioner's case based on the recent newspaper article. Petitioner moved to excuse the jurors who had read the article, but the trial court allowed jurors to remain on the panel as long as they could express their assurance that they could set aside the information in the newspaper article.

Petitioner ultimately was convicted of both murder counts and he was sentenced to life in prison. On direct appeal to the Colorado Court of Appeals ("CCA"), Petitioner raised the following four claims: (1) the trial court erred in determining that the state's inability to account for evidence for a period of more than a year was not a break in the chain of custody; (2) the trial court erred in allowing introduction of the pathologist's recollection of an undisclosed third party's statements as to the test results; (3) the trial court erred in refusing to either grant a change of venue or strike jurors who had read

media accounts detailing inadmissible and highly prejudicial prior bad acts of Petitioner; and (4) the trial court erred in finding that Petitioner's pre-arrest comments to law enforcement waived the marital privilege. The CCA rejected Petitioner's claims and affirmed the judgment of conviction. *See People v. Martinez*, No. 00CA1685 (Colo. Ct. App. Sept. 19, 2002) (unpublished decision) (Doc. # 39 at App. D). On March 3, 2003, the Colorado Supreme Court denied Petitioner's petition for writ of certiorari on direct appeal. (*Id.* at App. I.)

On March 31, 2003, Petitioner filed a postconviction motion pursuant to Rule 35(c) of the Colorado Rules of Criminal Procedure claiming that counsel was ineffective and asserting other errors. Counsel was appointed to represent Petitioner and on March 24, 2004, counsel filed a supplemental Rule 35(c) motion that incorporated Petitioner's original claims and added new claims. On June 1, 2004, the trial court denied a number of Petitioner's Rule 35(c) claims without a hearing. Following a hearing, the trial court rejected Petitioner's remaining claims. The CCA subsequently affirmed the trial court's rejection of Petitioner's Rule 35(c) claims. *See People v. Martinez*, No. 04CA2473 (Colo. Ct. App. Aug. 31, 2006) (unpublished decision) (Doc. # 39 at App. N). On February 20, 2007, the Colorado Supreme Court denied Petitioner's petition for writ of certiorari in the postconviction proceedings. (*Id.* at App. P.)

Petitioner argues in the Petition that: (1) he was denied a fair trial because the trial court admitted evidence for which a proper chain of custody could not be

established; (2) he was denied a fair trial because the trial court admitted testimony by his ex-wife in violation of the spousal privilege; (3) he was denied a fair trial because the trial court denied his request for a change of venue or a continuance based on prejudicial pretrial publicity; (4) his rights under the Confrontation Clause were violated when the trial court admitted hearsay testimony of the pathologist regarding toxicology test results; and (5) his rights were violated when the trial court denied a portion of his postconviction Rule 35(c) motion without a hearing.

## II. LEGAL STANDARDS

The Court must construe the Petition and other papers filed by Petitioner liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be an advocate for a *pro se* litigant. *See Hall*, 935 F.2d at 1110.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question pursuant to § 2254(d)(1) is whether Petitioner seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1). *See id.* at 1018. If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407-08. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Id.*

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to that court. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and Petitioner bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not

insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, the Court "owe[s] deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, the Court "must uphold the state court's summary decision unless [the Court's] independent review of the record and pertinent federal law persuades [the Court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178. "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id.*

If a claim has not been adjudicated on the merits in state court, and also is not procedurally barred, the Court must review the claim *de novo* and the deferential standards of § 2254(d) do not apply. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

### III. DISCUSSION

**A.    <u>CLAIM ONE</u>**

Petitioner first claims that he was denied a fair trial because the trial court admitted evidence for which a proper chain of custody could not be established. More specifically, Petitioner alleges that physical evidence gathered at the murder scene in

October 1979 was moved to a new evidence room at some point prior to 1997 and mixed in with evidence from other cases. Petitioner contends that:

> The party responsible for this procedure violation claimed this evidence hadn't been tampered with, but couldn't state what condition the evidence was in the day it was placed in the evidence room in 1979, couldn't state whether or not the evidence had been placed in tamper[-]proof containers[,] and couldn't state with absolute certainty that this evidence had been unchanged from its original form.

(Doc. # 11 at 66-67.) Respondents argue that Petitioner's first claim should be dismissed because the claim raises only a violation of Colorado state law rather than a federal constitutional issue.

Construing the Petition liberally, the Court finds that Petitioner's first claim, in which he specifically asserts a violation of his "constitutional right to a fair trial," (*id.* at 66) raises a federal constitutional claim.[2] However, the Court finds that Petitioner is not entitled to relief based on the trial court's alleged error in admitting evidence for which a proper chain of custody had not been established.

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Therefore, "[h]abeas

---

[2] The Court notes that Petitioner did not raise this claim as a federal constitutional claim in the state courts and, because Petitioner would be barred from raising the claim as a federal constitutional claim in a new state court postconviction proceeding, *see People v. Bastardo*, 646 P.2d 382, 383 (Colo. 1982), it appears that the claim is procedurally barred, *see Jackson v. Shanks*, 143 F.3d 1313, 1317 (10th Cir. 1998). Notwithstanding Petitioner's failure to exhaust state remedies for his first claim, the Court may deny the claim on the merits. *See* 28 U.S.C. § 2254(b)(2).

relief may not be granted on the basis of state court evidentiary rulings unless they rendered the trial so fundamentally unfair that a denial of constitutional rights results." *Mayes v. Gibson*, 210 F.3d 1284, 1293 (10th Cir. 2000); *see also Fox v. Ward*, 200 F.3d 1286, 1296-97 (10th Cir. 2000) (stating that, to justify habeas relief, a trial court's evidentiary error must be "so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process").

"[B]ecause a fundamental-fairness analysis is not subject to clearly definable legal elements, when engaged in such an endeavor a federal court must tread gingerly and exercise considerable self restraint." *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002) (internal quotation marks omitted). The Court's "[i]nquiry into fundamental unfairness requires examination of the entire proceedings." *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002) (*per curiam*). Furthermore, in the instant action, the Court must review Petitioner's first claim *de novo* because the claim was not adjudicated on the merits as a federal constitutional claim by the state courts. *See Gipson*, 376 F.3d at 1196.

The Court has reviewed the state court record of Petitioner's trial and finds that, on direct appeal, the CCA accurately summarized the circumstances surrounding the evidence issue as follows:

> Here, the trial court admitted items of evidence, over defendant's objection, because the police department's evidence custodian testified the items did not appear to have been tampered with since they were initially collected and placed into sealed containers. Contrary to defendant's assertions, the prosecution established to a reasonable certainty that the box containing the disputed evidence was in the

locked evidence room of the Mesa County Sheriff's Office. The evidence custodian testified that the evidence room was kept locked and that only the three evidence technicians had keys.

She further testified that when the sheriff's office moved to its new building, the paperwork was separated from some of the evidence, and some of the evidence was destroyed. The evidence custodian stated that, after consulting with the prior evidence custodian, she began looking for the evidence in September 1997 and located a box containing some items of evidence.

After being informed that there was more evidence, the evidence technicians searched the evidence room. In August 1998, more evidence from this case was found in the locked evidence room at the bottom of a box containing evidence from other cases. Some items of evidence were also found in a garbage bag with a resealable twist tie around the top. Each container in the trash bag was sealed with a case number. The evidence custodian testified that she inventoried and relabeled each piece of evidence she found and that all the seals appeared to be intact.

Although the evidence custodian conceded, on cross-examination, that she was not familiar with the original condition of the garbage bag, when it was placed in the evidence room, the chain of custody was sufficiently established. Any gaps in the chain of custody went to the weight to be given the evidence by the jury.

(Doc. # 39 at App. D, pp. 2-3.)

Despite Petitioner's arguments regarding the alleged gap in the chain of custody, the Court cannot conclude that the asserted error in admitting physical evidence for which a proper chain of custody allegedly had not been established was so grossly prejudicial that it fatally infected the trial and denied fundamental fairness. In particular, there was no indication at Petitioner's trial that the physical evidence gathered at the murder scene in 1979 had not been kept locked in the evidence room or that there had been any actual tampering. As a result, the Court agrees that the circumstances

surrounding the chain of custody were matters to be resolved by the jury in determining the weight to be given that evidence.

Furthermore, even assuming a constitutional violation did occur, the Court finds that any error was harmless. "[I]n § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard" in *Brecht v. Abrahamson*, 507 U.S. 619 (1993). *Fry v. Pliler*, 551 U.S. 112, 121 (2007). Pursuant to *Brecht*, a constitutional error does not warrant habeas relief unless the Court concludes it "had substantial and injurious effect" on the jury's verdict. *Brecht*, 507 U.S. at 637. If the evidence is balanced so evenly that the Court is in grave doubt about whether the error meets this standard, the Court must hold that the error is not harmless. *O'Neal v. McAninch*, 513 U.S. 432, 436-37 (1995). The Court makes this harmless error determination based upon a review of the entire state court record. *See Herrera v. Lemaster*, 225 F.3d 1176, 1179 (10th Cir. 2000).

The Court finds that any error in admitting the physical evidence gathered at the murder scene did not have a substantial and injurious effect on the jury's verdict because the physical evidence merely established that Petitioner was present in the victim's trailer and that he had sex with the victim, facts that supported the defense theory. Petitioner's entire defense was predicated on the fact that he was having an affair with the victim because he had made statements to the authorities, which were admitted at trial, accusing his wife of killing the victim when she discovered Petitioner

and the victim having sex.  Therefore, the Court finds that any error in admitting the

physical evidence gathered at the murder scene in October 1979 was harmless.

As a result, Petitioner's first claim for relief will be dismissed.

**B.     CLAIM TWO**

Petitioner's second claim is that he was denied a fair trial because the trial court

admitted testimony by his ex-wife in violation of the spousal privilege.  Petitioner makes

the following allegations in support of his second claim:

> On 11-20-97[,] law enforcement from Mesa County[,] Colorado[,] came to
> Montrose County[,] Colorado[,] to interview me concerning an unsolved
> murder from 1979.  Before this interview these agents failed to obtain
> consent from my ex-wife for this interview.  (The Colorado law back then,
> reguarding [sic] marital privilege specifically stated: A spouse shall not be
> examined for or against his spouse without her consent[.]) Because of
> this, this information should have been deemed fruit of the poisinous [sic]
> tree and ruled inaddmissable [sic].  The information I'm referring to, is me
> blaming my wife of this murder.  After the Mesa County District Attorney
> charged me for this murder I forbid my ex-wife to devulge [sic] communi-
> cations we had concerning this murder but the [trial] Court ruled against
> this law and cleared the way for her to devulge [sic] this privilege [sic]
> information to the public.

(Doc. # 11 at 68.)  Respondents argue that Petitioner's second claim should be

dismissed because the claim raises only a violation of Colorado state law rather than

a federal constitutional issue.[3]

Once again, construing the Petition liberally, the Court finds that Petitioner's

second claim, in which he specifically asserts a violation of his "constitutional right to

---

[3]   Respondents also read Petitioner's second claim as including an allegation of
ineffective assistance of counsel.  In his Traverse, Petitioner specifically disavows any intent
to raise an ineffective assistance of counsel claim with respect to the marital privilege issue.
(*See* Doc. # 24 at 8.)

a fair trial," (*id.*) raises a federal constitutional claim.[4]  However, the Court finds that Petitioner is not entitled to relief based on the trial court's alleged error in admitting evidence in violation of the spousal privilege.

As the Court discussed above in the context of Petitioner's first claim, "[h]abeas relief may not be granted on the basis of state court evidentiary rulings unless they rendered the trial so fundamentally unfair that a denial of constitutional rights results." *Mayes*, 210 F.3d at 1293; *see also Fox*, 200 F.3d at 1296-97 (stating that, to justify habeas relief, a trial court's evidentiary error must be "so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process").  Therefore, like the Court's consideration of Petitioner's first claim, the Court also will consider Petitioner's second claim in the context of the entire proceedings. *See Le*, 311 F.3d at 1013.  It bears repeating that the Court "must tread gingerly and exercise considerable self restraint."  *Duckett*, 306 F.3d at 999.  Furthermore, the Court also must review Petitioner's second claim *de novo* because the claim was not adjudicated on the merits as a federal constitutional claim by the state courts.  *See Gipson*, 376 F.3d at 1196.

---

[4]  The Court again notes that, like his first claim, Petitioner did not raise his second claim as a federal constitutional claim in the state courts and, because Petitioner would be barred from raising the claim as a federal constitutional claim in a new state court postconviction proceeding, *see Bastardo*, 646 P.2d at 383, it appears that the second claim also is procedurally barred, *see Jackson*, 143 F.3d at 1317.  Once again, the Court elects to deny the second claim on the merits even though the claim was not exhausted.  *See* 28 U.S.C. § 2254(b)(2).

The Court has reviewed the state court record of Petitioner's trial and finds that the admission of testimony by Petitioner's ex-wife, allegedly in violation of the spousal privilege, did not render the trial fundamentally unfair. Petitioner specifically blamed his ex-wife for killing the victim, which served to waive the marital privilege under state law. *See Cummings v. People*, 785 P.2d 920, 926 (Colo. 1990). Under these circumstances, allowing the ex-wife to testify, even if it could be deemed an error under state law, was not "so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." *See Fox*, 200 F.3d at 1296-97. If anything, the Court finds that it would be unfair to allow Petitioner to prevent his ex-wife from testifying about their communications regarding the murder after he accused her of being the murderer. Therefore, the Court finds that Petitioner's second claim also lacks merit and will be dismissed.

## C.    <u>CLAIM THREE</u>

Petitioner alleges in his third claim that he was denied a fair trial because the trial court denied his request for a change of venue or a continuance based on prejudicial pretrial publicity. As noted above, a newspaper article published two days prior to the start of Petitioner's trial discussed allegations of prior sexual assault against Petitioner that had been ruled inadmissible by the trial court. Petitioner alleges that:

> Once I brought it to the attention of the [trial] Court and asked for a change of venue or at the very least a continueance [sic], my request was denied. Instead the [trial] Court made sure every potential juror knew I had a prior felony conviction history and asked every single potential juror if they could set there [sic] feelings aside and give me a fair trial.

(Doc. # 11 at 69.) Respondents argue that Petitioner's third claim fails on the merits.

The Sixth and Fourteenth Amendments to the United States Constitution guarantee a defendant the right to an impartial jury. *See Ross v. Oklahoma*, 487 U.S. 81, 85 (1988); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). "Potential jurors, however, are not expected to be totally ignorant of the facts surrounding a case. Rather, jurors are sufficiently impartial under constitutional standards if they can lay aside any preconceived opinions regarding the outcome of the case and 'render a verdict based on the evidence presented in court.'" *Goss v. Nelson*, 439 F.3d 621, 627 (10th Cir. 2006) (quoting *Irvin*, 366 U.S. at 723). "At the same time, the juror's assurances that he is equal to this task cannot be dispositive of the accused's rights, and it remains open to the defendant to demonstrate 'the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality.'" *Murphy v. Florida*, 421 U.S. 794, 800 (1975) (quoting *Irvin*, 366 U.S. at 723).

In addition to cases of actual prejudice, intense pretrial publicity, in certain circumstances, may lead to a presumption of prejudice. *See House*, 527 F.3d at 1023. The key in the cases in which the Supreme Court has presumed prejudice is that the proceedings "were entirely lacking in the solemnity and sobriety to which a defendant is entitled in a system that subscribes to any notion of fairness and rejects the verdict of a mob." *Murphy*, 421 U.S. at 799; *see also Goss*, 439 F.3d at 628 (surveying Supreme Court cases and concluding that prejudice may be presumed if the "pretrial publicity is so pervasive and prejudicial that we cannot expect to find an unbiased jury pool in the community"); *Hale v. Gibson*, 227 F.3d 1298, 1332 (10th Cir. 2000) (summarizing

Supreme Court cases and concluding that prejudice will be presumed only in extreme circumstances where the pretrial publicity "created either a circus atmosphere in the court room or a lynch mob mentality such that it would be impossible to receive a fair trial").

The CCA rejected Petitioner's claim that his rights were violated as a result of the allegedly prejudicial pretrial publicity. The CCA noted that Petitioner was challenging both the denial of "his motion for change of venue based on pretrial publicity" and, in the alternative, that "the trial court improperly denied his challenges for cause to potential jurors who had read a newspaper article about the case before trial." (Doc. # 39 at App. D, p.8.) The CCA reasoned as follows in rejecting these arguments:

> The trial court has broad discretion to determine a motion for change of venue. A change of venue may be granted if (1) the pretrial publicity had an actual adverse effect upon the jury panel or a portion thereof; or (2) the publicity is massive, pervasive and prejudicial, so that the denial of a fair trial may be presumed. However, the mere existence of extensive publicity, by itself, does not trigger a due process entitlement to a change of venue.

> The trial court may take various measures to ensure a defendant receives a fair trial, including conducting extensive voir dire of potential jurors, postponing the trial, empaneling potential jurors from an area not exposed to intense pretrial publicity, enlarging the jury pool, increasing the number of peremptory challenges, and instructing the jurors to consider only evidence presented in court.

> Here, according to defendant, the media coverage had an actual adverse effect on the venire because over half the potential jurors had directly or indirectly obtained information from the media coverage about the case. A newspaper article appearing two days before defendant's trial contained information that the trial court had excluded from evidence, including defendant's prior sexual assault convictions. Although the trial court denied defendant's motion for a change of venue, it took sufficient

steps to ensure he would receive a fair trial. Specifically, it enlarged the jury pool and questioned each juror individually to determine whether he or she could put aside the information in the newspaper and only consider the evidence presented at trial.

Thus, we conclude the trial court did not abuse its discretion in denying defendant's motion for a change of venue.

In addition, defendant contends he was forced to exercise his peremptory challenges to remove three potential jurors who had read the newspaper article because the trial court improperly denied his challenges for cause. We disagree.

We give great deference to the trial court in its rulings on challenges for cause because it is in the best position to evaluate a juror's credibility, demeanor, and sincerity in explaining his or her state of mind, and we will not overturn its decision absent an abuse of discretion.

A challenge for cause to a potential juror must be granted by the trial court where the juror has a state of mind evincing enmity or bias toward the defendant or the state. However, if the court is satisfied that a juror will render an impartial verdict according to the law and the evidence submitted to the jury at trial, then the court may deny a challenge for cause.

Further, if a defendant does not use the available peremptory challenges, reversal is not required unless the defendant's right to an impartial jury has been violated by the presence of a biased juror.

Here, the trial court conducted extensive voir dire, including questioning the jurors individually about whether they had read the newspaper article. The trial court allowed three jurors to remain on the jury panel after they assured the court that they could set aside the information in the newspaper article. Defendant exercised three peremptory challenges to remove these jurors. However, he did not exercise all of his twelve peremptory challenges, passing the jury after his tenth peremptory challenge. Therefore, defendant's right to an impartial jury was not violated.

Accordingly, the trial court's denial of the challenges for cause does not constitute an abuse of discretion.

(Doc. # 39 at App. D, pp. 8-10 (internal citations, quotation marks, and alterations omitted).)

Petitioner fails to demonstrate, or even allege, the existence of any circumstances that would give rise to a presumption of prejudice under the relevant Supreme Court precedents. *See Goss*, 439 F.3d at 628 (surveying Supreme Court cases and concluding that prejudice may be presumed if the "pretrial publicity is so pervasive and prejudicial that we cannot expect to find an unbiased jury pool in the community"); *Hale*, 227 F.3d at 1332 (summarizing Supreme Court cases and concluding that prejudice will be presumed only in extreme circumstances where the pretrial publicity "created either a circus atmosphere in the court room or a lynch mob mentality such that it would be impossible to receive a fair trial"). As noted above, Petitioner's claim of prejudicial pretrial publicity is premised on a single newspaper article published two days prior to the start of his trial. The relevant Supreme Court cases "do not 'stand for the proposition that juror exposure to . . . news accounts of the crime with which [the defendant] is charged alone presumptively deprives the defendant of due process.'" *Goss*, 439 F.3d at 630 (quoting *Murphy*, 421 U.S. at 799).

In the context of actual prejudice, the Court concludes that Petitioner fails to demonstrate the CCA's decision is contrary to or an unreasonable application of Supreme Court law because he has not shown "'the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality.'" *Murphy*, 421 U.S. at 800 (quoting *Irvin*, 366 U.S. at 723). During the course of voir dire, following an

19

individual examination of each potential juror regarding their exposure to the newspaper

article or any other source of information about the case, the trial court denied

Petitioner's renewed motion for change of venue and explained its reasoning as follows:

>All right.  Thank you.  I'm going to deny the renewed request for a change of venue.  As the case law makes clear, there are a number of different ways that a trial judge can deal with a publicity problem.  We've just spent the last couple of days using one of those methods.  That is, going through individual voir dire with each and every juror on the panel, allowing extensive examination of anybody who had read the article.  And I feel like at the conclusion of all this that we have ended up with a panel that includes all jurors who are qualified and who are not going to be affected by the publicity in this case.
>
>First, we do have the unusual situation of there being virtually no publicity until two days before jury selection begins and then there being a single article with what I consider very damaging information contained in it.  But we do not have a situation where there's long-term pervasive publicity where everybody on the panel has heard of the case.
>
>The people who we have examined individually clearly fell into two categories, those who never heard anything about it, and those who had read the article.  Those who read the article are subdivided into those who formed an opinion, couldn't set it aside.  They were all immediately dismissed.  There's another subgroup of people who read the article and – and remembered – did not perhaps have as strong an opinion and sometimes felt they could set aside whatever opinions they might have had but who I felt enough doubts about that they were excused anyway.  And there had to have been at least a dozen people in that particular subcategory.
>
>And then we have two jurors who were qualified in this part of the case anyway even though they had read the article, in fact, remembered in one case that the article mentioned a sex assault conviction, in the other case mentioned accusations, not convictions, but accusations in at least one other case of sex assault against the Defendant.  Both of those jurors were very unusual both in the level of their confidence that they could set it aside and I thought their analytical approach to the problem.  But these were people who were absolutely convinced that there was not

going to be any difficulty in setting it aside. Everything that they said as well as the way that they said it indicated that that was so.

Further, some of – some of them at least missed – one of the jurors did not remember some of the details of what actually was in the article. And, actually, I don't think either of them remembered all of the most damaging information in that article, including a number of different sex assault convictions.

My assessment of – of those jurors as well as all the other jurors is that the – it's – it's highly unlikely in my opinion that anybody who didn't remember that Mr. Martinez was reported to have other sex assault convictions or was in jail for sex assault convictions, anybody that didn't remember that in the context of this jury selection process is never going to remember it. I agree it certainly is surprising that people could forget that in two days or have failed to read the article closely enough to pick up on those charges, but maybe the rest of the world isn't as sensitive to these things as the attorneys and the judge in the case might be. But they were absolutely clued in, given every opportunity to recall this detail. I can't imagine anything that could come up in trial that would allow some hidden memory to come forth when direct questions in the context of a case involving sexual assault accusations made very clear to them, I can't imagine anybody coming up with something later that they did not come up with during this individual voir dire process.

Again, there are a number of different ways to end up with a fair jury panel in this district. One of them, only one of those methods is transferring venue. The other methods, the individual voir dire, the exclusion of jurors who remembered any details from that article or formed opinions that they couldn't set aside, I think have allowed is to end up with a beginning panel at this stage of things which is – constitutes a fair panel in terms of the allegations here. So the request for transfer of venue is denied at this point.

(Trial Tr., Vol. 17 at 299-302.) The following day, after having second thoughts about two members of the jury panel who specifically remembered reading in the newspaper article that Petitioner had prior sexual assault convictions or accusations, those two jurors also were dismissed. (Trial Tr., Vol. 18 at 2-6, 83-87, 136.)

The Court notes that the trial court's factual determinations that the seated jurors could act impartially is presumptively correct, *see Goss*, 439 F.3d at 633, and Petitioner fails to demonstrate the existence of any clear and convincing evidence to rebut the presumption of correctness as required pursuant to 28 U.S.C. § 2254(e)(1). Furthermore, Petitioner's assertion that the trial court "made sure every potential juror knew I had a prior felony conviction history and asked every single potential juror if they could set there [sic] feelings aside and give me a fair trial" (Doc. #11 at 69) is not supported by the record. As noted above, the trial court conducted individual voir dire with each potential juror regarding the newspaper article over the course of three days and excused those jurors who had formed an opinion or who would be unable to set aside what they had read in the newspaper article. (Trial Tr., Vols. 15-17.) For those potential jurors who had seen or read the newspaper article, the trial court inquired further about their ability to decide the case based solely on the evidence presented at trial. (*See id.*) Because each potential juror was examined individually and outside the presence of the other potential jurors, the jurors who had not seen the newspaper article were not exposed to any information from the potential jurors who had seen the newspaper article.

Finally, in addition to challenging the denial of his motion for a change of venue based on prejudicial pretrial publicity in his third claim, Petitioner alleges that trial counsel was ineffective because counsel failed to use all of his peremptory challenges and, as a result, waived the change of venue issue. It appears that this allegation

relates to the second portion of Petitioner's direct appeal claim in which he argued that the trial court improperly denied his challenges for cause to potential jurors who had read the allegedly prejudicial pretrial newspaper article.  However, Petitioner is factually mistaken that counsel's failure to use all of the defense's peremptory challenges resulted in a waiver of his claim challenging the denial of his motion to change venue based on prejudicial pretrial publicity.  The prejudicial pretrial publicity claim was addressed on the merits by the CCA and, as discussed above, the Court concludes that the CCA's decision is neither contrary to nor an unreasonable application of clearly established federal law.  Therefore, Petitioner's third claim for relief lacks merit and also will be dismissed.

**D.    CLAIM FOUR**

Petitioner asserts in his fourth claim that his rights under the Confrontation Clause were violated when the trial court admitted hearsay testimony of the pathologist regarding toxicology test results.  As noted above, Petitioner's motion to exclude testimony regarding an oral report of toxicology results allegedly obtained by the pathologist from an unknown source at a Utah toxicology laboratory in 1979 was denied and the trial court allowed the pathologist to testify that toxicology tests established that no amphetamines or barbiturates had been found in the victim's system.  Petitioner alleges the following in support of his fourth claim:

> On 10-27-79 the pathologist sent blood from the victim in this case to a toxicology lab in Salt Lake City[,] Utah[,] to have it tested for drugs.  Some time afterwards he recived [sic] hearsay information that no drugs were found in the blood.  He never recieved [sic] a hard copy of the results.

In 1993 the toxicologist that performed this test died and in 1995 the only hard copy of these test results were [sic] destroyed. At trial in 2000 I objected to the pathologist testifying to any aspect of this test result; my objection was overruled.

(Doc. # 11 at 70.) Although not explained in the Petition, Petitioner apparently sought to exclude the evidence of the toxicology test results because the absence of drugs in the victim's system undercut Petitioner's theory at trial that his sexual encounter with the victim was consensual and that his relationship with the victim was ongoing and based in part on drug use. Respondents contend that this claim lacks merit.

The right of an accused to confront the witnesses against him is guaranteed by the Sixth Amendment to the United States Constitution and applies in both federal and state prosecutions. *See Stevens v. Ortiz*, 465 F.3d 1229, 1235 (10th Cir. 2006). "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990).

In addressing Petitioner's fourth claim, the Court first must determine what is the clearly established law to be applied. Petitioner argues that his fourth claim should be considered in the context of the Supreme Court's decision in *Crawford v. Washington*, 451 U.S. 36 (2004). However, the threshold question under 28 U.S.C. § 2254(d)(1) is whether Petitioner seeks to apply a rule of law that was clearly established at the time his conviction became final. *See Williams*, 529 U.S. at 390. Petitioner's conviction became final in 2003, when his direct appeal concluded. The Supreme Court's decision

in *Crawford* was announced the following year and the Supreme Court has determined

that *Crawford* does not apply retroactively to cases on collateral review. *See Whorton*

*v. Bockting*, 549 U.S. 406, 409 (2007). Therefore, *Crawford* is not applicable to

Petitioner's fourth claim. Instead, the Court must apply the clearly established

Confrontation Clause law that existed in 2003 prior to *Crawford*. At that time,

> the Confrontation Clause permitted the admission of a hearsay statement
> made by a declarant who was unavailable to testify if the statement bore
> sufficient indicia of reliability, either because the statement fell within a
> firmly rooted hearsay exception or because there were "particularized
> guarantees of trustworthiness" relating to the statement in question.

*Id.* at 412 (quoting *Ohio v. Roberts*, 448 U.S. 56, 66 (1980)).

On Petitioner's direct appeal, the CCA assumed that the trial court erred in

admitting the pathologist's testimony regarding the toxicology test results, but concluded

that the error in admitting the testimony was harmless based on the following reasoning:

> First, contrary to defendant's assertions, his theory of defense was not
> significantly undercut, because the pathologist's testimony did not
> preclude the possibility that the victim had used drugs before she died.
> The pathologist testified that the negative blood test results for ampheta-
> mines did not prove that the victim had not used them before she died,
> because blood fails to show their presence within a few hours after
> ingestion. Second, defendant's former wife testified as to the inculpatory
> statements he made during the marriage. Finally, a witness testified that
> in the months following the murder, defendant confessed to him that he
> had killed the victim.

(Doc. # 39 at App. D, p.6.)

Like the CCA, the Court will assume the trial court erred in admitting the

pathologist's testimony regarding the toxicology test results. However, that is not the

end of the Court's inquiry because the alleged Confrontation Clause violation is subject

to harmless error analysis.  *See Crespin v. New Mexico*, 144 F.3d 641, 649 (10th Cir. 1998).

As discussed above in the context of Petitioner's first claim, "in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard" in *Brecht v. Abrahamson*, 507 U.S. 619 (1993).  *Fry*, 551 U.S. at 121.  Pursuant to *Brecht*, a constitutional error does not warrant habeas relief unless the Court concludes it "had substantial and injurious effect" on the jury's verdict.  *Brecht*, 507 U.S. at 637.  If the evidence is balanced so evenly that the Court is in grave doubt about whether the error meets this standard, the Court must hold that the error is not harmless.  *O'Neal*, 513 U.S. at 436-37.  The Court make this harmless error determination based upon a review of the entire state court record.  *See Herrera*, 225 F.3d at 1179.

The Court has reviewed the state court record and does not find that admission of the pathologist's testimony regarding the toxicology test results "had substantial and injurious effect" on the jury's verdict.  *Brecht*, 507 U.S. at 637.  In particular, the Court agrees with the CCA that the pathologist's testimony, which did not preclude the possibility that the victim had used drugs before she died, did not significantly undercut Petitioner's theory that his sexual encounter with the victim was consensual and that his relationship with the victim was ongoing and based in part on drug use.  Furthermore, Petitioner's inculpatory statements implicating himself in the murder also convince the Court that the pathologist's testimony regarding the toxicology test results did not have

substantial and injurious effect on the jury's verdict.  Therefore, I find that claim four

lacks merit and must be dismissed.

**E.**   **CLAIM FIVE**

Petitioner finally claims that his rights were violated when the trial court denied a

portion of his postconviction Rule 35(c) motion without a hearing.  Petitioner explains

the factual basis for this claim as follows:

> On 6-1-04 a large portion of my ineffective assistance of counsel motion
> was denied without a hearing.  The [trial] Court simply marked an X in a
> box marked "the motion is DENIED for the reasons presented by the
> motion's opponent(s)."  This is a clear constitutional violation.  The issues
> denied like this were crucial because the higher courts ruled that my trial
> counsel waived my marital privilege issue by there [sic] conduct at trial
> and also that my trial counsel waived my change of venue issue by not
> using all my premeptory [sic] challenges.  My ineffective assistance of
> counsel motion should have been denied in its entirety and a fact-finding
> reason for each issue, or been given a hearing in its entirety and given a
> fact-finding reason for denial at the conclusion of this hearing.  I would like
> for your court to reverse this error and remand this motion back to Mesa
> County[,] Colorado[,] District Court with instructions to hold a hearing on
> the motions [sic] entirety with fact-findings at the conclusion of this
> hearing.

(Doc. # 11 at 71.)  Respondents argue that Petitioner's fifth claim was not presented to

the state courts and, as a result, is unexhausted.  Respondents also argue that, under

Colorado law, the trial court properly could adopt the government's reasoning in denying

Petitioner's postconviction motion.

The Court finds that Petitioner's fifth claim lacks merit because the claim relates

solely to the state court postconviction proceedings and not the validity of Petitioner's

conviction or sentence.  As a result, Petitioner's fifth claim must be dismissed because

there is no federal constitutional right to postconviction review in the state courts.  *See*

*Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987).  A claim of constitutional error that

"focuses only on the State's post-conviction remedy and not the judgment which

provides the basis for [Petitioner's] incarceration . . . states no cognizable federal

habeas claim."  *Sellers v. Ward*, 135 F.3d 1333, 1339 (10th Cir. 1998); *see also Steele v.*

*Young*, 11 F.3d 1518, 1524 (10th Cir. 1993) (noting that petitioner's challenge to state

"post-conviction procedures on their face and as applied to him would fail to state a

federal constitutional claim cognizable in a federal habeas proceeding").  Although

Petitioner describes his fifth claim as a an ineffective assistance of counsel claim in

his Traverse (*see* Doc. #24 at 8), Petitioner does not assert any claim of ineffective

assistance of counsel in the Petition or his Traverse and he fails to assert specific facts

that arguably could support a claim that counsel was ineffective.  *See Mayle v. Felix*,

545 U.S. 644, 655 (2005) (stating that habeas corpus pleading rules are more

demanding than the rules applicable to ordinary civil actions, which require only notice

pleading); *see also Ruark v. Gunter*, 958 F.2d 318, 319 (10th Cir. 1992) (per curiam)

(noting that naked allegations of constitutional violations are not cognizable under

28 U.S.C. § 2254).  Therefore, the Court will not construe Petitioner's fifth claim as

an ineffective assistance of counsel claim.  Instead, Petitioner's fifth claim will be

dismissed for failure to raise a cognizable federal constitutional issue.  Accordingly, it is

ORDERED that:

1.      Petitioner Richard Lee Martinez's Petition Under 28 U.S.C. § 2254 For

        Writ of Habeas Corpus ("Petition") (Doc. # 11) is DENIED;

2.      This case is DISMISSED WITH PREJUDICE; and

3.      There is no basis on which to issue a certificate of appealability pursuant

        to 28 U.S.C. § 2253(c).

DATED at Denver, Colorado, this __16th__ day of __March__, 2010.

                                        BY THE COURT:

                                        _____
                                        CHRISTINE M. ARGUELLO
                                        United States District Judge